795 P.2d 229

The **STATE of Arizona**, Appellee,

v.

**Gregg Harold BELYEU**, Appellant.

No. 2 CA–CR 89–0338.

Court of Appeals of Arizona, Division 2, Department A.

June 21, 1990.

As Corrected June 26, 1990.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Leah L. Hamilton, Asst. Public Defender, Tucson, for appellant.

## OPINION

ROLL, Presiding Judge.

Defendant Gregg Harold Belyeu appeals from convictions for second-degree burglary and criminal damage. For the reasons set forth below, we affirm.

## FACTS

At approximately 7:00 a.m. on January 21, 1989, 76–year–old T. was awakened by the sound of something falling off the back porch of her mobile home in Marana, Arizona. She could neither see nor hear anyone when she looked outside. Minutes later, she heard a crash and telephoned 911. She heard a second crash and discovered that her living room window was broken. When T. went to investigate, she observed Belyeu picking glass from the window frame. Frightened, she retreated to her bedroom. Belyeu entered through the window and went to the bedroom. There, he pushed on the door and said, "Lady, don't hold me out." At that time, T.'s 60–year–old husband J. approached Belyeu from behind with a handgun and ordered Belyeu to lie down on the floor. When T. again tried to phone 911, she discovered the phone by the window was off the hook.

A key to a utility room at the residence was found in Belyeu's pocket. The key had been next to the phone near the window through which Belyeu had entered. Deputies also found a 12–inch metal bar in Belyeu's pocket. This bar was from a

scrap pile in the couple's back yard. When Belyeu was placed into the patrol car, he loudly stated, within hearing of T.: "Die, rag, die." The couple discovered damage to aluminum siding of their mobile home as well as to the window frame and found pry marks on a rear window of the mobile home.

Belyeu testified at trial. He stated that he had been walking in the area of the couple's home when a car passed by. He heard two pops, which he believed to be sounds caused by a .22–caliber firearm. He said that he saw an Hispanic male hanging out of a car window, pointing a gun at him. He knew of no reason for anyone to be shooting at him. Belyeu ran to an alley behind the couple's residence. He then saw a man approximately 75 yards away in the alley. He attempted to retreat to the street, but saw the car again. Belyeu then climbed the six-foot-high fence surrounding the couple's back yard and hid behind a wood pile. He picked up the steel bar for protection. Belyeu testified that he was safe while he was behind the wood pile. However, when Belyeu left the wood pile, he heard the sound of car tires on gravel. He then ran to the back of the porch and knocked on the door, without response. He next attempted to gain entry into the house by breaking the window, at which time he spotted a key on a desk immediately inside the mobile home. Belyeu reached through the window, picked up the key, and attempted to open the door to the mobile home with it. When this failed, he placed the key in his pocket. He admitted that after he climbed through the window, he went to the bedroom door and told T. not to shut him out, but stated that he did so because he wanted to explain about the shooting. He also admitted stating, "[d]ie, rag, die," but said that he directed this statement toward Deputy Stephanie Harding and not T. He said he made this statement because he was "extremely scared and extremely confused." The couple testified that they never heard anyone knocking on the door of the mobile home and heard no gunshots prior to the breaking of the kitchen window.

## PROCEDURAL BACKGROUND

Belyeu was indicted for second-degree burglary, attempted robbery, theft by control, criminal damage, and two counts of influencing a witness. The state alleged a 1986 prior felony conviction for burglary. The state also alleged that Belyeu was on probation at the time the instant offenses allegedly occurred. The attempted robbery, attempted theft, and influencing witness counts were dismissed with prejudice. The jury found Belyeu guilty of second-degree burglary and criminal damage. Belyeu admitted his prior conviction during his testimony, and the state later proved that he was on probation when the offense occurred.

## ISSUES ON APPEAL

On appeal, Belyeu argues: (1) the trial court inadequately instructed the jury regarding predicate crimes for burglary; (2) the trial court failed to instruct the jury on duress, which was Belyeu's theory of defense; (3) insufficient evidence exists to support his burglary conviction; and (4) consecutive sentences were illegal.

### Jury Instructions on Predicate Crimes

Belyeu argues that the trial court erred when it failed to instruct the jury on the elements of theft, assault, and robbery. These offenses were the three predicate crimes upon which a burglary conviction could be based in the instant case.

■■■ Absent fundamental error, a party who does not object to the giving or the failure to give a particular jury instruction waives any error arising therefrom. Rule 21.3(c), Ariz.R.Crim.P., 17 A.R.S.;[1] *State v.*

1. Rule 21.3(c), Ariz.R.Crim.P., 17 A.R.S. provides:

    C. Waiver of Error. No party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof or to the submission or failure to submit a form of verdict unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of its objections.

    The note to this rule indicates, however, that fundamental error cannot be waived.

*Dippre,* 121 Ariz. 596, 598, 592 P.2d 1252, 1254 (1979). Where the instructions given were those requested by the defendant, the defendant cannot claim error on appeal based upon the giving of the instructions. *State v. Taylor,* 109 Ariz. 481, 483, 512 P.2d 590, 592 (1973); *State v. Thornbrugh,* 24 Ariz.App. 573, 574, 540 P.2d 192, 193 (1975). In the matter before us, defense counsel expressly requested that the jury not be instructed on the definitions of theft, assault, and robbery:

> THE COURT: I would be willing to define assaults, robberies and thefts if either counsel wants them.
>
> [Defense Counsel]: I don't think—I don't want a definition, Your Honor.

A defendant may not deliberately cause the trial court to refrain from giving a particular jury instruction, then claim on appeal that such action constituted reversible error. In *State v. Tassler,* 159 Ariz. 183, 185, 765 P.2d 1007, 1009 (App.1988), this court stated:

> Because the instruction given was the one expressly requested by defense counsel, that issue is waived. One may not deliberately inject error in the record and then profit from it on appeal [citation omitted].

In *State v. Bieterman,* 61 Ariz.Adv.Rep. 27, 30 (Ct.App. Apr. 24, 1990), Division One of this court held that fundamental error can be waived when it is shown that defense counsel engaged in a tactical maneuver to engage the trial court in fundamental error. In the matter before us, there is no evidence that defense counsel was involved in such maneuvers. We therefore address whether the trial court's failure to instruct the jury on the definition of the predicate crimes of theft, assault, and robbery constitutes fundamental error. *See State v. Smith,* 138 Ariz. 79, 83, 673 P.2d 17, 21 (1983).

■ In the matter before us, the trial court gave the following jury instruction regarding burglary:

> A person commits burglary in the second degree by entering or remaining unlawfully while in a residential structure with the intent to commit any theft or any felony therein.

Based upon the request of defense counsel, no definitions for possible predicate offenses were given.

Whether the trial court is required to instruct the jury on the definitions of predicate offenses in a burglary prosecution is a question of first impression in Arizona. For the most part, other courts confronted with this issue have concluded that failure to instruct the jury on such definitions is not fundamental error. *Inman v. State,* 191 Ga.App. 497, 382 S.E.2d 122 (1989); *People v. Browry,* 8 Ill.App.3d 599, 603, 290 N.E.2d 650, 654 (1972); *Blackmon v. State,* 455 N.E.2d 586, 589–90 (Ind.1983). *But see People v. Failla,* 64 Cal.2d 560, 414 P.2d 39, 51 Cal.Rptr. 103 (1966).

In *Blackmon,* the Supreme Court of Indiana held that the jury was adequately instructed on the crime of burglary when it was told that a person committed burglary by breaking and entering into a building or structure with the intent of committing a felony inside. The court rejected the defendant's argument that the court was required to define the term "felony." In *Inman,* the Georgia Court of Appeals stated that the trial court was not required to define the terms felony and theft in jury instructions regarding the crime of burglary. In so ruling, the court stated that theft had a common, non-technical meaning and that felony need not be defined absent a request by defense counsel. In *Browry,* the Appellate Court of Illinois ruled that in a prosecution for burglary, the trial court need not instruct the jury on the elements of theft.

In the matter before us, during Belyeu's testimony, he asserted that he did not realize that anyone was in the mobile home when he entered. The residents of the mobile home described hearing sounds outside the trailer before Belyeu made his forced entry through the window. From Belyeu's surreptitious entry, the jury had ample evidence of his entry with the intent to commit a theft. *See State v. Tubbs,* 155 Ariz. 533, 536, 747 P.2d 1232, 1235 (App. 1987), and cases cited therein. If the jury

believed Belyeu's testimony that he did not realize that the mobile home was occupied, theft would have been the only one of the three predicate offenses possible, since without a victim, neither assault nor robbery could have been committed. As articulated in *Inman* and *Browry*, theft is a common term which, when invoked as the basis for a burglary conviction, need not be defined. In view of the ample evidence that Belyeu entered with the intent to commit a theft and the trial court's instruction that Belyeu was guilty of burglary if he entered with the intent of committing a theft, the trial court's failure to define the elements of theft did not constitute fundamental error. In light of the above, fundamental error has not been established.

### Failure to Instruct on Duress

[6] Belyeu next argues that the trial court erred when it failed to instruct the jury on the defense of duress. He asserts that he was acting under duress at the time that he entered the mobile home and that the trial court's refusal to give a duress instruction deprived him of an instruction on his theory of the case.

A.R.S. § 13–412(A) defines the defense of duress:

> A. Conduct which would otherwise constitute an offense is justified if a reasonable person would believe that he was compelled to engage in the proscribed conduct by the threat or use of immediate physical force against his person or the person of another which resulted or could result in serious physical injury which a reasonable person in the situation would not have resisted.

In *State v. Lamar*, 144 Ariz. 490, 497, 698 P.2d 735, 742 (App.1984), this court stated:

> Duress envisions a third person compelling a person by the threat of immediate physical violence to commit a crime against another person or the property of another person.

The court described an example of duress in which a taxi driver was forced by an armed man to participate in armed robbery. *Id.* *See* LaFave & Scott, *Substantive Criminal Law* 615 (1986).

Failure of the trial court to give an instruction is not reversible error unless it is prejudicial to the rights of a defendant and such prejudice appears on the record. *State v. Islas*, 132 Ariz. 590, 591, 647 P.2d 1188, 1189 (App.1982). A defendant is entitled to a jury instruction on any theory reasonably supported by the evidence. *State v. Lucas*, 146 Ariz. 597, 603, 708 P.2d 81, 87 (1985).

The evidence before the jury indicates that even assuming the truth of Belyeu's account of events, he remained undetected while he was behind the woodpile and was not in imminent danger. Neither the sound of a car travelling on a nearby road nor the sight of someone walking in the alley 75 yards away reasonably compelled Belyeu to leave his place of safety behind the woodpile and to forcibly enter the victims' home. In declining to instruct the jury on duress, the trial court stated that there was an absence of evidence that Belyeu faced imminent danger unless he forcibly entered the home. We agree. On these facts, no reasonable person would have concluded that it was necessary to forcibly enter the residence.

### Denial of Judgment of Acquittal

Belyeu argues that the trial court erred when it refused to enter a judgment of acquittal on the burglary charge. A judgment of acquittal is appropriate only when there is no substantial evidence to warrant a conviction. Rule 20(a), Ariz.R.Crim.P., 17 A.R.S.; *State v. Hallman*, 137 Ariz. 31, 38, 668 P.2d 874, 881 (1983). A judgment of acquittal should not be granted where reasonable minds could differ on the inferences to be drawn from the evidence presented. *State v. Cantua–Ramirez*, 149 Ariz. 377, 379, 718 P.2d 1030, 1032 (App.1986). In deciding whether sufficient evidence exists, this court must view the evidence in the light most favorable to sustaining the jury's verdict. *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987).

The jury was confronted with conflicting evidence and was required to exer-

cise its responsibility of weighing the credibility of witnesses. Viewing the evidence in the light most favorable to sustaining the verdict, the evidence indicates that Belyeu forcibly entered the house, possessed an iron pipe capable of being used as a weapon, picked up a key which would have opened a utility room of the residence, and attempted to force his way into a bedroom occupied by an elderly woman. A jury may infer the intent necessary to commit burglary from the fact that Belyeu gained entry by breaking a window. *State v. Malloy*, 131 Ariz. 125, 130, 639 P.2d 315, 320 (1981) (jury can infer intent to commit burglary from fact that defendant broke a window to gain entrance); *State v. Rodriguez*, 114 Ariz. 331, 333–34, 560 P.2d 1238, 1240–41 (1977) (jury can infer intent from forced entry and unsatisfactory explanation for entry); *State v. Tubbs*, 155 Ariz. at 536, 747 P.2d at 1235 (App.1987) (jury can infer intent to commit burglary from fact that defendant ripped off screen and entered through the window). *Cf. State v. Rood*, 11 Ariz.App. 102, 104, 462 P.2d 399, 401 (1969) ("Surely entry by force or through a window or by some other surreptitious means might support [an inference of intent to steal]").

The evidence indicates that Belyeu's actions were interrupted only because J. pointed a gun at him and forced him to lay on the floor. From these facts, the jury could reasonably have concluded that Belyeu intended to commit a theft, robbery, and/or assault inside the mobile home.

The trial court did not err in denying Belyeu's motion for judgment of acquittal.

### *Legality of Consecutive Sentences*

█ Finally, Belyeu argues that it was impermissible for the trial court to impose consecutive sentences for second-degree burglary and criminal damage, *citing State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989), and A.R.S. § 13–116.

A.R.S. § 13–116 provides:

An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other, to the extent the constitution of the United States or of this state require.

In *Gordon*, the supreme court noted that it is difficult to draw a bright line distinction between single act and multiple acts for purposes of applying A.R.S. § 13–116. *Id.* at 313, 778 P.2d at 1209. The supreme court stated that *State v. Tinghitella*, 108 Ariz. 1, 491 P.2d 834 (1971), continues to have vitality and prescribes the following approach: (1) the facts of each crime are to be considered separately, "subtracting from the factual transaction the evidence necessary to convict on the ultimate charge," which is often the most serious crime; (2) "[i]f the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible;" (3) the entire transaction is then examined, with a view toward determining whether it is factually possible "to commit the ultimate crime without also committing the secondary crime"—if not, then the defendant may have committed only a single act under A.R.S. § 13–116; and (4) it must be determined "whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime"—if so, a finding of multiple acts subject to consecutive sentences is ordinarily appropriate. *Gordon*, 161 Ariz. at 315, 778 P.2d at 1211.

Using this analysis, and subtracting the facts upon which the burglary is based, the remaining facts, to wit, other damage to the trailer aside from damage caused in the course of breaking the window to obtain entry, are sufficient to sustain a conviction for criminal damage. These remaining facts also establish that it was factually possible to commit the burglary without committing the lesser offense of criminal damage. Finally, the couple suffered additional harm by virtue of the criminal damage.

On these facts, consecutive sentences were permissible.

## CONCLUSION

We have searched the record for fundamental error and have found none. The judgment of conviction and sentences are affirmed.

HOWARD and HATHAWAY, JJ., concur.