47 P.3d 1150

The STATE of Arizona, Appellee,

v.

Dwight Douglas SIDDLE, Appellant.

No. 2 CA–CR 2000–0253.

Court of Appeals of Arizona, Division Two, Department B.

June 18, 2002.

As Corrected July 17, 2002.

**514**

Janet Napolitano, Arizona Attorney General, By Randall M. Howe and Diane M. Ramsey, Tucson, for Appellee.

Susan A. Kettlewell, Pima County Public Defender, By Brian X. Metcalf, Tucson, for Appellant.

*OPINION*

HOWARD, Presiding J.

¶1 A jury found appellant Dwight Siddle guilty of unlawful possession of a dangerous drug for sale, unlawful possession of equipment or chemicals for the purpose of manufacturing a dangerous drug, possession of drug paraphernalia, and possession of a deadly weapon during the commission of a felony drug offense. The trial court sentenced Siddle to concurrent terms of imprisonment for the drug offenses, the longest of which was 9.25 years and a consecutive 4.5-year prison term for the possession of a deadly weapon charge. On appeal, Siddle contends the trial court improperly permitted a witness to refer to the fact that he had invoked his Fifth Amendment right to remain silent. Siddle also contends that his convictions for both the drug offenses and for possession of a deadly weapon during a felony drug offense violate federal and state double jeopardy principles and A.R.S. § 13–

116.[1] Because we disagree with Siddle's contentions, we affirm.

## BACKGROUND

¶2 We view the facts and reasonable inferences therefrom in the light most favorable to sustaining the verdicts. *State v. Nihiser,* 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App. 1997). Siddle had been living with Traci at her residence. Traci gave law enforcement officers permission to search her residence for a firearm. During that limited search, officers observed other items suggesting criminal activity. While the officers were in the process of obtaining a telephonic search warrant for the residence, Siddle drove up in a car towing a utility trailer.

¶3 After taking Siddle into custody, the officers searched the residence, Siddle, the car he had been driving, and the utility trailer he had been towing. In the residence, the officers found a spoon that had methamphetamine residue on it, a syringe containing methamphetamine, several empty syringes, and several materials used in the manufacture of methamphetamine. On Siddle's person, the officers found five plastic bags of methamphetamine and $295. In the car, officers found a handgun, syringes, $2,290, and numerous packs of matches. In the utility trailer, the officers found numerous materials used in the production of methamphetamine, including iodine, two- and three-phase liquids containing methamphetamine or methamphetamine byproducts, several over-the-counter nasal decongestants, methamphetamine recipes, a scale containing methamphetamine residue, and numerous other items used to produce methamphetamine.

## DISCUSSION

¶4 Siddle first contends the trial court erred by allowing a law enforcement officer who testified at trial to be asked a juror's question that improperly referred to Siddle's invocation of his right to remain

---

1. In his opening brief, Siddle also relied on *State v. Thompson,* 198 Ariz. 142, 7 P.3d 151 (App. 2000), to support his contention that the trial court had erroneously enhanced his sentences based on a prior conviction for which he was sentenced on the same day as he was sentenced for the charges at issue here. After Siddle filed his opening brief, however, our supreme court vacated *Thompson. State v. Thompson,* 200 Ariz. 439, 27 P.3d 796 (2001). Accordingly, Siddle has withdrawn that contention.

silent. On direct examination the prosecutor asked the officer, "So you've taken [Siddle] into custody. What happened then?" The officer responded, "I proceeded to Mirandize him, and we wanted to ask Mr. Siddle questions." The prosecutor did not elicit any further testimony from the officer regarding the questioning of Siddle. But, after both parties' attorneys finished examining the officer, a juror submitted a written question inquiring whether Siddle had admitted "that the paraphernalia [in the residence] belonged to him." After a bench conference in which the prosecutor recommended not asking the question, the trial court asked the officer, "Did Mr. Siddle make any statements to you about who the paraphernalia and items belonged to?" The officer responded that Siddle had not made any such statements. The prosecutor did not refer to Siddle's silence in closing arguments. Siddle did not object to this testimony below, and has, therefore, waived all but fundamental error. *State v. Comer*, 165 Ariz. 413, 426, 799 P.2d 333, 346 (1990). Fundamental error is error that deprives a defendant of a right essential to his or her defense and of a fair trial, or goes to the very foundation of the defendant's theory of the case. *State v. Valenzuela*, 194 Ariz. 404, ¶ 15, 984 P.2d 12, ¶ 15 (1999).

■ ¶ 5 Due process demands that the state refrain from introducing testimony reflecting that a defendant had invoked his or her right to remain silent. *State v. Gilfillan*, 196 Ariz. 396, ¶ 36, 998 P.2d 1069, ¶ 36 (App. 2000). But testimony that falls short of disclosing a defendant's invocation of the right to remain silent does not run afoul of the Due Process Clause. *See id.* at ¶ 38, 998 P.2d 1069 (no reversible error when "question and answer did not necessarily suggest to the jury that the defendant was guilty because he had invoked his right to counsel during police questioning"); *State v. Flores*, 160 Ariz. 235, 237, 772 P.2d 589, 591 (App. 1989) (no error when reference to *Miranda* warnings did not call jury's attention to defendant's invocation of his right to remain silent); *State v. Oppenheimer*, 138 Ariz. 120,

124, 673 P.2d 318, 322 (App.1983) (officer's testimony that defendant had stated "if he didn't feel like answering some questions he wouldn't" not reversible error). Because the officer here did not state or imply that Siddle had invoked his right to remain silent, the trial court did not commit error, much less fundamental error. *See Gilfillan; Flores; Oppenheimer.*

¶ 6 Moreover, the only way in which Siddle claims to have been prejudiced is that the reference hampered his defense that Traci had possessed the contraband materials. That argument ignores the fact that the vast majority of contraband was found on Siddle, in the car he had been driving, and in the utility trailer he had been towing. There was no evidence that Traci had exercised any dominion over Siddle's shorts, the car, or the trailer. And, even assuming that Traci possessed the contraband found in the residence, the remaining contraband provided overwhelming evidence of Siddle's guilt on each count. *See* A.R.S. §§ 13–3102(A)(8); 13–3407(A)(2) and (3); 13–3415(A). The error, if any, was not fundamental.

■ ¶ 7 Siddle also contends that his convictions violate federal and state double jeopardy principles because the substantive drug offenses are lesser-included offenses of possession of a deadly weapon during the commission of a drug felony and he has thus been punished multiple times for the same offenses.[2] U.S. Const. amend. V; Ariz. Const. art. II, § 10. The state and federal double jeopardy clauses generally provide the same protection to criminal defendants. *State v. Eagle*, 196 Ariz. 188, ¶ 5, 994 P.2d 395, ¶ 5 (2000). We review de novo whether double jeopardy applies. *State v. Powers*, 200 Ariz. 123, ¶ 5, 23 P.3d 668, ¶ 5 (App.2001), *approved*, 200 Ariz. 363, 26 P.3d 1134 (2001).

■ ¶ 8 "The Double Jeopardy Clause bars a second prosecution for the same offense after conviction or acquittal and bars multiple punishments for the same offense." *Id.* Because Siddle's convictions occurred in a

---

**2.** The state asserts that Siddle has waived all but fundamental error by not raising this issue below. But a violation of double jeopardy is fundamental error. *State v. Millanes*, 180 Ariz. 418,

421, 885 P.2d 106, 109 (App.1994) (prohibition against double jeopardy is "fundamental right that is not waived by the failure to raise it in the trial court").

single trial, we are only concerned with the prohibition against multiple punishments for the same offense.

¶ 9 "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983); *see also Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977) ("Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional [double jeopardy] guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."); *United States v. Salameh*, 261 F.3d 271, 277–78 (2d Cir.2001); *Eagle*, 196 Ariz. 188, ¶ 6, 994 P.2d 395, ¶ 6. In the context of a single trial, absent "a clear indication of contrary legislative intent," we presume that the legislature did not intend to authorize multiple punishments for a violation of two statutory provisions that are the same offense for double jeopardy purposes. *Whalen v. United States*, 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715, 724 (1980); *see also Brown*, 432 U.S. at 166, 97 S.Ct. at 2225–26, 53 L.Ed.2d at 194; *Eagle*, 196 Ariz. 188, ¶ 6, 994 P.2d 395, ¶ 6.

¶ 10 Distinct statutory provisions constitute the same offense if they are comprised of the same elements. *Brown*, 432 U.S. at 166, 97 S.Ct. at 2225, 53 L.Ed.2d at 194. If " 'each provision requires proof of an additional fact that the other does not,' " they are not the same offense. *Id.*, *quoting Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). In the context of lesser-included offenses, the test has been articulated as "whether [the purported lesser-included offense] is, by its very nature, *always* a constituent part of the greater offense, or whether the charging document describes the lesser offense even though it does not always make up a constituent part of the greater offense." *State v. Chabolla–Hinojosa*, 192 Ariz. 360, ¶ 12, 965 P.2d 94, ¶ 12 (App.1998) (emphasis added). *See also State v. Welch*, 198 Ariz.

554, ¶ 7, 12 P.3d 229, ¶ 7 (App.2000). In applying this test we focus on the elements of each provision and do not "consider the particular facts of the case." *State v. Cook*, 185 Ariz. 358, 361, 916 P.2d 1074, 1077 (App. 1995); *see also Brown*, 432 U.S. at 166, 97 S.Ct. at 2226, 53 L.Ed.2d at 194.

¶ 11 With the exception of possession of drug paraphernalia, the drug offenses here are greater offenses than the weapons offense by reason of felony classification. *Compare* § 13–3102(J) (violation of § 13–3102(A)(8) is class four felony) *with* § 13–3407(B)(2) and (3) (possession of dangerous drug for sale is class two felony; possession of equipment to manufacture dangerous drug is class three felony). As a result, the weapons offense is not a lesser-included offense of the drug offenses as Siddle claims. *See Chabolla–Hinojosa*, 192 Ariz. 360, ¶ 12, 965 P.2d 94, ¶ 12 ("A lesser-included offense can have the same or lesser penalty as the greater offense.").

¶ 12 Nevertheless, even after applying the same elements test, we find no violation of double jeopardy principles. To prove possession of a deadly weapon during the commission of a drug felony, the state must establish that a defendant knowingly used or possessed a deadly weapon "during the commission of any felony [drug] offense." § 13–3102(A)(8). Any drug felony will satisfy the requirements of the statute. As a result, the substantive felony drug offenses at issue here are not always a constituent part of § 13–3102(A)(8). *See State v. Jackson*, 217 Neb. 332, 348 N.W.2d 866, 869 (1984) (second-degree assault is not element of use of firearm to commit felony). Further, the count of the indictment that alleged the weapons offense did not describe a particular drug felony. *See Chabolla–Hinojosa*, 192 Ariz. 360, ¶ 12, 965 P.2d 94, ¶ 12. In sum, the statutory provisions at issue here are not composed of the same elements, and they are not, therefore, the same offense. Consequently, the presumption that the legislature did not intend to authorize multiple punishments is not applicable here. *Whalen*, 445 U.S. at 692, 100 S.Ct. at 1438, 63 L.Ed.2d at 724; *Brown*, 432 U.S. at 166, 97 S.Ct. at

2225–26, 53 L.Ed.2d at 194; *Eagle,* 196 Ariz. 188, ¶ 6, 994 P.2d 395, ¶ 6.

¶ 13 Moreover, in the context of a single trial, even if statutory provisions do constitute the same offense, we will not conclude that multiple punishments are prohibited if we can discern that the legislature clearly intended otherwise. *Hunter,* 459 U.S. at 368, 103 S.Ct. at 679, 74 L.Ed.2d at 543–44; *Whalen,* 445 U.S. at 692, 100 S.Ct. at 1438, 63 L.Ed.2d at 724; *see also Salameh,* 261 F.3d at 277–78 (Congress clearly intended multiple punishments for use of firearm in furtherance of crime of violence and underlying crime of violence). In discerning legislative intent, we first look to the statutory language. *Norgord v. State ex rel. Berning,* 201 Ariz. 228, ¶ 7, 33 P.3d 1166, ¶ 7 (App. 2001). If the language is inconclusive, we look to other factors, "including 'the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose.'" *Id., quoting Hobson v. Mid–Century Ins. Co.,* 199 Ariz. 525, ¶ 8, 19 P.3d 1241, ¶ 8 (App.2001).

¶ 14 By enacting § 13–3102(A)(8), which by its express terms requires the commission of another felony offense, the legislature clearly intended to permit multiple punishments. The vast majority of statutes creating drug offenses already existed when § 13–3102(A)(8) was added in 1990. *See* 1990 Ariz. Sess. Laws, ch. 366, § 5; 1987 Ariz. Sess. Laws, ch. 307, §§ 15–24, 27; 1981 Ariz. Sess. Laws, ch. 264, § 8. As illustrated by this case, and as noted above, many drug offenses are in a higher class of felony than § 13–3102(A)(8). And, if the drug offenses were to be regarded as a lesser-included offense of § 13–3102(A)(8), as Siddle suggests, it would actually reduce the penalties for the drug offenses. We presume the legislature did not intend this. We conclude that by enacting § 13–3102(A)(8) the legislature intended to increase, not decrease, the penalties for drug offenses when a deadly weapon is involved.

¶ 15 Furthermore, § 13–3102(A)(8) is analogous to felony murder. A.R.S. § 13–1105(A)(2). Both statutes require the commission of an enumerated predicate felony plus the presence of an additional element. Felony murder and the predicate felony are distinct crimes and may be punished separately in a single trial without running afoul of double jeopardy principles. *State v. Wiley,* 144 Ariz. 525, 541, 698 P.2d 1244, 1260 (1985), *overruled on other grounds, State ex rel. Criminal Div. of Attorney Gen.'s Office v. Superior Court,* 157 Ariz. 541, 760 P.2d 541 (1988). We see no reason to reach a different conclusion here. Siddle's convictions and sentences do not violate double jeopardy principles.

¶ 16 Siddle also contends that even if that is so, his consecutive sentence for possession of a deadly weapon during the commission of a felony drug offense violates the statutory prohibition against consecutive sentences for a single act. § 13–116. We review de novo whether consecutive sentences are permissible under § 13–116. *See State v. Belyeu,* 164 Ariz. 586, 591, 795 P.2d 229, 234 (App.1990).

¶ 17 Section 13–116 states in pertinent part: "An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." Unlike our double jeopardy analysis, which focuses on the elements of distinct statutory offenses to determine if they are the same offense, our analysis under § 13–116 focuses on the "facts of the transaction" to determine if the defendant committed a single act. *State v. Gordon,* 161 Ariz. 308, 313 n. 5, 778 P.2d 1204, 1209 n. 5 (1989). To determine whether a transaction is a single act for purposes of § 13–116, we consider three factors:

[W]e will … judge a defendant's eligibility for consecutive sentences by considering the facts of each crime separately, subtracting from the factual transaction the evidence necessary to convict on the ultimate charge—the one that is at the essence of the factual nexus and that will often be the most serious of the charges. If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible under A.R.S. § 13–116. In applying this analytical framework, however, we will then consider whether, given the entire "transaction," it was factually impossible to commit the ulti-

mate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13–116. We will then consider whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences.

*Id.* at 315, 778 P.2d at 1211.

¶ 18 Here, the crimes "at the essence of the factual nexus" are the felony drug offenses. *Id.* After subtracting the facts necessary to convict Siddle of those charges, there is insufficient evidence to support his conviction under § 13–3102(A)(8). This suggests that Siddle committed a single act. But Siddle could have committed the drug offenses without also committing the weapons offense. And, by possessing a dangerous weapon during the felony drug offenses, Siddle increased the risk of harm beyond that inherent in the drug offenses. These two factors strongly suggest that Siddle committed multiple acts in the perpetration of the offenses. Based on these factors, we conclude that consecutive sentences were permissible under § 13–116.

¶ 19 Finally, Siddle suggests § 13–3102(A)(8) is unconstitutionally vague. He has not identified any particular vagueness in the statute, and we have found none. In our view, § 13–3102(A)(8) gives " 'a person of ordinary intelligence a fair notice that his contemplated conduct is forbidden by the statute.' " *Reinesto v. Superior Court,* 182 Ariz. 190, 193, 894 P.2d 733, 736 (App.1995), *quoting State v. Limpus,* 128 Ariz. 371, 375, 625 P.2d 960, 964 (App.1981).

**DISPOSITION**

¶ 20 Siddle's convictions and sentences are affirmed.

ESPINOSA, C.J. and DRUKE, J., concurring.