61 P.3d 479

**The STATE of Arizona, Appellee/Respondent,**

v.

**Abraham David SEPAHI, Appellant/Petitioner.**

**Nos. 2 CA–CR 2001–0403, 2 CA–CR 2002–0163–PR.**

Court of Appeals of Arizona, Division 2, Department B.

Jan. 28, 2003.

Review Granted June 30, 2003.

Terry Goddard, Arizona Attorney General, By Randall M. Howe and Diane Leigh Hunt, Tucson, for Appellee.

Robert Carter Olson, Pinal County Attorney, By Robert C. Brown, Florence, for Respondent.

Roberts & Rowley, Ltd., By Brian D. Strong, Mesa, for Appellant/Petitioner.

### OPINION

PELANDER, J.

¶ 1 After a five-day jury trial, appellant Abraham David Sepahi was convicted of two counts of aggravated assault against K., a minor. The trial court sentenced Sepahi to two, consecutive, ten-year prison terms pursuant to A.R.S. § 13–604.01(K). On appeal, Sepahi contends the trial court erred in finding that his offenses were dangerous crimes committed against a child, in imposing consecutive sentences, and in empaneling twelve rather than eight jurors.

¶ 2 We affirm Sepahi's convictions but conclude that the trial court erred in classifying the offenses as dangerous crimes against a child and in sentencing Sepahi pursuant to § 13–604.01(K). We further conclude that, because Sepahi's aggravated assaults constituted a single act for purposes of A.R.S. § 13–116, concurrent sentences are required.

¶ 3 In his consolidated petition for review from the trial court's summary denial of relief on his petition for post-conviction relief, filed pursuant to Rule 32, Ariz. R.Crim. P., 17 A.R.S., Sepahi claims he received ineffective assistance of trial counsel. We grant review but deny relief, finding the trial court did not abuse its discretion in dismissing the petition.

### APPEAL

### BACKGROUND

¶ 4 We view the facts, which are largely undisputed, in the light most favorable to sustaining the convictions. *State v. Marshall,* 193 Ariz. 547, ¶ 3, 975 P.2d 137, ¶ 3 (App.1998). In September 1999, Sepahi and his friend, W., both minors, approached K. and D., an adult, while the latter two were on the front porch of D.'s trailer. W. asked D. who he was "claiming," apparently an inquiry about what gang D. was affiliated with. D. answered that he was "a member of GD Folks," referring to the "Gangster Disciples Folks" gang. W. then responded with an expletive, "F__ Folks."

¶ 5 Concerned that the situation could escalate into a fight between D. and W., K. stepped off the porch and repeatedly asked W. and Sepahi to leave. Sepahi then told W. to "[h]it the bitch and get it over with." At this, K. became agitated, began waving her arms, and threatened to fight both Sepahi and W. While K. was waving her arms, Sepahi hit her on the arm. In response, K. hit Sepahi on the head. Sepahi then stepped back, pulled out a gun from his waistband, and fired one shot, which hit K. in the stomach. Sepahi and W. then ran off.

¶ 6 Although Sepahi was a minor when this incident occurred, he was charged as an adult with attempted second-degree murder, A.R.S. §§ 13–1001, 13–1104(A)(2); aggravated assault causing serious physical injury, A.R.S. § 13–1204(A)(1); and aggravated assault involving the use of a deadly weapon or dangerous instrument. § 13–1204(A)(2). The jury acquitted Sepahi of the attempted murder charge but found him guilty on both counts of aggravated assault. The jury also found that both offenses were dangerous and that, at the time of the incident, K. had been less than fifteen years old. At sentencing, the trial court found, pursuant to § 13–604.01, that Sepahi's offenses were dangerous crimes committed against a child. Accordingly, the court sentenced Sepahi to two, consecutive, ten-year prison terms pursuant to § 13–604.01(K). This appeal followed.

## DISCUSSION

### I. Applicability of § 13–604.01

¶ 7 Sepahi challenges the trial court's conclusion that § 13–604.01 applies to his offenses. Because this issue involves interpretation and application of a statute, we review the claim de novo. *State v. Samano*, 198 Ariz. 506, ¶ 6, 11 P.3d 1045, ¶ 6 (App. 2000).

¶ 8 Section 13–604.01 requires enhanced penalties for persons convicted of "dangerous crimes against children." The statute sets forth various offenses that, if "committed against a minor who is under fifteen years of age," constitute "[d]angerous crime[s] against children." § 13–604.01(L)(1). Among the statutorily prescribed offenses that come within that definition is "[a]ggravated assault resulting in serious physical injury or involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument." § 13–604.01(L)(1)(b).

¶ 9 Relying primarily on *State v. Williams*, 175 Ariz. 98, 854 P.2d 131 (1993), and *State v. Jansing*, 186 Ariz. 63, 918 P.2d 1081 (App. 1996), Sepahi argues that his offenses were not dangerous crimes committed against a child because "§ 13–604.01 requires more than a victim under age fifteen," and because his crimes were "not the type of high-recidi-vism offenses which gave birth to A.R.S. § 13–604.01." In *Williams*, the defendant was convicted of aggravated assault for having recklessly rammed his pickup truck into the rear of a station wagon while intoxicated, injuring a fourteen-year-old boy in the station wagon. 175 Ariz. at 99, 854 P.2d at 132. Because that victim was under fifteen years of age, the trial court found that the offense was a dangerous crime against a child and accordingly enhanced the defendant's sentence pursuant to § 13–604.01. 175 Ariz. at 99, 854 P.2d at 132. Our supreme court vacated the sentence, however, because "there was no evidence that [the defendant's] behavior was directed at or focused upon the victim, or that he was even aware of the minor's presence in the station wagon." *Id.* at 104, 854 P.2d at 137. In *Jansing*, Division One of this court reached the same result in a similar case, but in which "the victim of defendant's aggravated assault was a passenger in her own car," and therefore, the defendant "knew that he was present and under fifteen." *Jansing*, 186 Ariz. at 70, 918 P.2d at 1088.

¶ 10 In *Williams*, the court "reject[ed] the state's contention that committing an offense 'against' a child within the meaning of § 13–604.01 is the same as committing an offense, the victim of which happens to be a child." 175 Ariz. at 103, 854 P.2d at 136. To constitute a "dangerous crime against children," the court stated, "the defendant's conduct must be focused on, directed against, aimed at, or target a victim under the age of fifteen." *Id.* The court also noted, however, that a defendant's "knowledge of the victim's age is unnecessary" under § 13–604.01. 175 Ariz. at 103, 854 P.2d at 136. Rather, "[w]hen an individual targets a person, he or she generally assumes the risk that the victim will turn out to be within a protected age group." *Id.*

¶ 11 This case clearly satisfies the *Williams* requirement that Sepahi's "conduct [was] focused on, directed against, aimed at, or target[ed] a victim under the age of fifteen." *Id.* By pointing his gun at K., a minor under the age of fifteen, and shooting her in the stomach, Sepahi clearly "aimed at" and "targeted" K. *Id.* Indeed, the

court in *Williams* specifically noted that, when a person "cause[s] serious physical injury by striking a child, or . . . confront[ing] a child with a deadly weapon[,] . . . there [can] be no serious doubt that the crime of aggravated assault would be a dangerous crime against a child." *Id.* at 101, 854 P.2d at 134.

¶ 12 That Sepahi committed offenses prescribed in § 13–604.01(L)(1) against a minor under fifteen years of age, however, does not end the inquiry or analysis. As the court stated in *Williams*:

> Given the list of crimes, and the language "against a minor," a fair construction of the statute is that it refers to crimes in which a child is the target of the criminal conduct. That is to say, a dangerous crime against a child is a crime against a child *qua* child. . . . This supports the meaning that a crime against a child is a crime against a child as a child or in the capacity of a child.

175 Ariz. at 101, 854 P.2d at 134. The court further noted:

> The legislative history indicates quite clearly that the enactment of § 13–604.01 was calculated to reach criminals who prey specifically upon children. . . . Of particular concern was the perceived recidivist nature of the people who commit these crimes.
>
> We conclude, as we have before, that the legislature, in enacting § 13–604.01, was attempting to respond effectively to those predators who pose a direct and continuing threat to the children of Arizona. The lengthy periods of incarceration are intended to punish and deter those persons, and simultaneously keep them off the streets and away from children for a long time. The special penalties . . . are calculated to deal with persons peculiarly dangerous to children.

*Id.* at 102–03, 854 P.2d at 135–36 (footnote omitted); *see also Jansing,* 186 Ariz. at 70, 918 P.2d at 1088, *quoting Williams,* 175 Ariz. at 102, 854 P.2d at 135 ("To be guilty of a dangerous crime against children, . . . [t]he defendant must ' prey specifically upon children.' ").

¶ 13 In *Samano,* Division One of this court extended that reasoning beyond the context of intoxicated drivers. The defendant in that case was charged with and convicted of, inter alia, kidnapping a two-year-old child, a dangerous crime against children pursuant to § 13–604.01. 198 Ariz. 506, ¶ 4, 11 P.3d 1045, ¶ 4. During a burglary and robbery of the child' s mother' s residence, the defendant had told the mother to hold her child, who had been wandering around the apartment. *Id.* at ¶ 3. On appeal, the defendant contended that his kidnapping of the child "was purely incidental to the burglary and robbery and was not based on or related to [the boy' s] status as a child." *Id.* at ¶ 5. Division One of this court agreed and vacated the consecutive sentence the trial court had imposed for that count pursuant to § 13–604.01(K). *Id.* at ¶ 20. Application of § 13–604.01, the court noted, "turns . . . upon whether a defendant preys upon or targets a child for the commission of a crime at least in part because the child is a child." *Id.* at n. 3. Because "the element of preying on a child [was] conspicuously absent" in *Samano, id.* at ¶ 17, and because the record did not establish that the defendant had "focuse[d] on or target[ed] a child as a child," *id.* at ¶ 18, the court vacated "that portion of the sentence imposing the dangerous crimes against children enhancement." *Id.* at ¶ 20.

¶ 14 We reach that same conclusion and result here. As the trial court specifically found at sentencing, Sepahi clearly directed his criminal acts against a targeted victim under the age of fifteen. But there was no evidence that Sepahi is "peculiarly dangerous to children" or otherwise "pose[s] a direct and continuing threat to the children of Arizona." *Williams,* 175 Ariz. at 102–03, 854 P.2d at 135–36. Nor was there any evidence that Sepahi "prey[ed] upon or focuse[d] on or target[ed K.] as a child." *Samano,* 198 Ariz. 506, ¶ 18, 11 P.3d 1045, ¶ 18. Indeed, the trial court specifically noted at sentencing:

> There is no proof of record in any manner, particularly in light of the psychologist and psychiatrist' s letters that were submitted that [Sepahi is] a predator of children or that the targeted group of [his] actions were [sic] at the time of the incident or at any other time chosen because

they were children; that is, [his] victim was not a child qua child.

... There [also] is no proof the incident was anything other than a one-time incident attributable in large part to the use of illegal substances and youthful ... hubris, ... or arrogance and lack of self-control.

■■ ¶ 15 In keeping with *Williams* and *Samano,* we conclude that § 13–604.01 does not apply to this case and that categorizing Sepahi's offenses as dangerous crimes against a child, thereby mandating consecutive sentences pursuant to § 13–604.01(K), would contravene rather than effect the legislature's intent. *See Samano,* 198 Ariz. 506, ¶ 18, 11 P.3d 1045, ¶ 18 (although "the statutory language [in § 13–604.01] is clear, its *meaning* is not").[1] Accordingly, we vacate the consecutive sentences the trial court imposed pursuant to § 13–604.01(K) and remand the case to the trial court for resentencing. *See Williams,* 175 Ariz. at 104, 854 P.2d at 137.

## II. Applicability of § 13–116

¶ 16 Sepahi also contends the double punishment prohibition in § 13–116 precludes consecutive sentences in this case. We address this issue because it may arise on remand. And, because this issue also involves statutory interpretation and application, our review is de novo. *Samano; see also State v. Siddle,* 202 Ariz. 512, ¶ 16, 47 P.3d 1150, ¶ 16 (App.2002) (court reviews de novo whether consecutive sentences are permissible under § 13–116); *State v. Belyeu,* 164 Ariz. 586, 591, 795 P.2d 229, 234 (App.1990) (same).

■ ¶ 17 Section 13–116 provides in pertinent part: "An act or omission which is made punishable in different ways by different sec-

tions of the laws may be punished under both, *but in no event may sentences be other than concurrent.*" (Emphasis added.) Because § 13–116 comes into play only when a defendant is being punished in different ways for a single act, we first address whether Sepahi's aggravated assaults against K. constituted one act. "The definitive decision on the subject of whether a single criminal episode can result in multiple punishments is *State v. Gordon,* 161 Ariz. 308, 778 P.2d 1204 (1989)." *State v. Alexander,* 175 Ariz. 535, 537, 858 P.2d 680, 682 (App.1993). "[A]nalysis under § 13–116 focuses on the 'facts of the transaction' to determine if the defendant committed a single act" and evaluates three factors in making that determination. *Siddle,* 202 Ariz. 512, ¶ 17, 47 P.3d 1150, ¶ 17, quoting *Gordon,* 161 Ariz. at 313 n. 5, 778 P.2d at 1209 n. 5.[2]

¶ 18 The *Gordon* analysis preliminarily requires a determination of which crime a defendant commits is the "ultimate crime," that is, "the [crime] that is at the essence of the factual nexus and that will often be the most serious of the charges." *Gordon,* 161 Ariz. at 315, 778 P.2d at 1211. This court has noted that it is "difficult, if not impossible" to determine the ultimate crime for purposes of *Gordon* when the defendant has been convicted of multiple crimes of the same substantive type arising out of a single criminal episode. *State v. Boldrey,* 176 Ariz. 378, 382 n. 3, 861 P.2d 663, 667 n. 3 (App.1993) ("In the case of a single episode involving several sexual crimes against a child *Gordon* is difficult, if not impossible, to apply."). The analysis is even more difficult in cases such as this when both crimes are the same class of felony and neither crime is clearly more "serious" than the other. Therefore, we assume

1. The state argues that *"Samano* was wrongly decided," urges us to repudiate it, and contends "[t]here should be no inquiry as to *why* [Sepahi] directed his criminal conduct at the child[, K.]." Regardless of whether we agree with the result in *Samano,* the "child qua child" requirement the court applied in that case emanates directly from *Williams,* a supreme court case that this court is bound to follow. *See City of Phoenix v. Leroy's Liquors, Inc.,* 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993). Moreover, "[a]lthough we are not 'absolutely bound' by [*Samano* ], we consider it 'highly persuasive and bind-

ing, unless we are convinced that [it is] based upon clearly erroneous principles, or conditions have changed so as to render [it] inapplicable.' " *Danielson v. Evans,* 201 Ariz. 401, ¶ 28, 36 P.3d 749, ¶ 28 (App.2001), quoting *Castillo v. Industrial Comm'n,* 21 Ariz.App. 465, 471, 520 P.2d 1142, 1148 (1974).

2. The state has not conducted a *Gordon* analysis but, rather, "assume[s], without conceding, that the aggravated assault counts were not separate acts under § 13–116."

that Sepahi's "ultimate crime" was the crime of aggravated assault resulting in serious physical injury. *See* § 13–1204(A)(1).

¶ 19 Once a defendant's ultimate crime is determined, the first step of the *Gordon* analysis consists of "subtracting from the factual transaction the evidence necessary to convict on the ultimate charge." *Gordon*, 161 Ariz. at 315, 778 P.2d at 1211. "If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible under A.R.S. § 13–116." *Id.*

■ ¶ 20 Here, the evidence from the factual transaction necessary to convict Sepahi of the ultimate crime—aggravated assault resulting in serious physical injury—was that Sepahi shot K. in the stomach with a gun. Once that evidence is subtracted, there is no "remaining evidence" left to establish the elements of the other crime, aggravated assault involving a deadly weapon or dangerous instrument. *See* § 13–1204(A)(2). Thus, the first prong of the *Gordon* analysis strongly suggests that Sepahi committed a single act for purposes of § 13–116.

■ ¶ 21 Applying *Gordon's* second factor, we next "consider whether, given the entire 'transaction,' it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13–116." *Id.* Under the facts here, the offense of inflicting serious physical injury—the ultimate crime—intrinsically involved the use of a deadly weapon—the secondary crime. Sepahi's crimes were factually dependent upon one another, and he could not have committed one without also committing the other. Therefore, this prong of the *Gordon* analysis also suggests that Sepahi committed a single act for purposes of § 13–116.

■ ¶ 22 Finally, *Gordon's* third factor requires us to "consider whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences." *Id.* Sepahi's use of a gun exposed K. to the threat of physical injury, the same type of harm inherent in the ultimate crime. Based on all three *Gordon* factors, we conclude that Sepahi committed a single act and, therefore, that consecutive sentences are impermissible under § 13–116.

■ ¶ 23 The trial court apparently agreed with this conclusion, noting that Sepahi's offenses had been "done in almost one act." But the court nonetheless felt bound by the mandatory language of §§ 13–1204(A) and (B) and 13–604.01(K) to sentence Sepahi to consecutive sentences. In view of our conclusion that § 13–604.01 does not apply, however, consecutive sentences are neither mandated nor permissible here.[3] And, because we do not know what sentences the trial court might have imposed under these circumstances, we remand the case for resentencing. *See State v. Viramontes*, 163 Ariz. 334, 339–40, 788 P.2d 67, 72–73 (1990) (under *Gordon* analysis, "entire 'transaction' constituted one act, punishable only by concurrent sentences"; but case remanded for resentencing because record did not clearly reflect that "trial court would have imposed the same sentences if it had been aware that consecutive sentences were not available").

### III. Number of Jurors

■ ¶ 24 Lastly, Sepahi contends the trial court committed fundamental error by empaneling twelve rather than eight jurors. In criminal cases, twelve jurors are required when "a sentence of death or imprisonment for thirty years or more is authorized by law." A.R.S. § 21–102(A); *see also* Ariz Const. art. II, § 23. In any other criminal case, however, the jury "shall consist of eight persons." § 21–102(B). Sepahi contends that, because consecutive sentences were im-

---

**3.** We do not address the state's argument that this court incorrectly decided *State v. Arnoldi*, 176 Ariz. 236, 860 P.2d 503 (App.1993), in which we concluded that "§ 13–116 is paramount in the statutory scheme of sentencing" and that former § 13–604.01(J), now (K), "require[s] a trial court to impose consecutive sentences, but only in the event that those sentences do not violate § 13–116." *Id.* at 242, 860 P.2d at 509.

permissible, "his maximum [sentencing] exposure at trial was twenty-one (21) years." Thus, he argues, an eight-person jury was required. We review this issue de novo. *See generally State v. Smith*, 197 Ariz. 333, 4 P.3d 388 (App.1999); *State v. Uriarte*, 194 Ariz. 275, 981 P.2d 575 (App.1998).

¶ 25 As noted above, we have concluded that Sepahi is not subject to consecutive sentences and, therefore, that he cannot receive a sentence of imprisonment of thirty years or more. *See* A.R.S. §§ 13–604(I), 13–1204(B). That conclusion, however, required substantial analysis and application of law to facts established in the record. It is neither reasonable nor realistic to require trial courts to engage in such analyses at the beginning of trial. That is particularly so when, as here, the defendant does not object to a twelve-person jury, and because juries often are empaneled when the trial court only has before it the indictment listing the charges against a defendant. In short, we agree with the state that "a trial court should not be burdened with anticipating whether an appellate court will decide on review the particular sentence enhancement factors were improperly alleged against, or did not lawfully apply to, the accused when the trial court is determining whether the accused is lawfully entitled to a 12–person jury."

¶ 26 Moreover, as the state also points out, any suggestion of prejudice resulting from a twelve-person jury is dubious. Obtaining a unanimous verdict of guilt probably becomes more difficult as the number of jurors increases. In any event, Sepahi cites no authority, nor are we aware of any, to support the notion that empanelment of a twelve-person jury prejudiced him or that empaneling more jurors than required constitutes fundamental error in a case such as this. Accordingly, we reject the argument.

## PETITION FOR REVIEW

¶ 27 In his petition for review, Sepahi contends that he received ineffective assistance of trial counsel and that the trial court erred by dismissing that claim without holding an evidentiary hearing. We review a trial court's denial of post-conviction relief for an abuse of discretion. *State v. Watton*, 164 Ariz. 323, 325, 793 P.2d 80, 82 (1990).

¶ 28 To state a colorable claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objectively reasonable standards and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985). If a defendant fails to make a sufficient showing on either prong of the *Strickland* test, the court need not determine whether the other prong was satisfied. *State v. Salazar*, 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985). A colorable claim of post-conviction relief is "one that, if the allegations are true, might have changed the outcome." *State v. Runningeagle*, 176 Ariz. 59, 63, 859 P.2d 169, 173 (1993).

¶ 29 Sepahi argues, as he did below, that his trial counsel was ineffective because counsel failed to "adequately inform [Sepahi] about the risk of trial [and his exposure to mandatory prison sentences] versus any specific plea offer made by the State." The state responds that it never made a specific plea offer to Sepahi and, therefore, that his counsel could not have been ineffective because Sepahi had no choice but to face the risk of going to trial.

¶ 30 At issue is a conversation initiated by Sepahi's trial counsel during trial in April 2001, in which he suggested to the prosecutor the possibility of a plea agreement under which Sepahi would plead guilty to aggravated assault, a class three, nondangerous crime, and thereby avoid a prison sentence. At a subsequent Board of Clemency hearing in January 2002, the prosecutor stated that he had responded as follows to Sepahi's trial counsel's suggestion, "No, he has to plead to a mandatory prison offense. He almost killed this girl, it's a very violent offense, people are tired of kids with guns, he has to plead to a mandatory prison offense." The prosecutor further stated at that hearing that Sepahi's trial counsel "was not at all interested in that" and that "the range would have been five to fifteen under the terms that I offered, a class 3 dangerous." Several

weeks later, the prosecutor executed an affidavit that the state filed with its response to Sepahi's Rule 32 petition. In that affidavit, the prosecutor stated that, after he had informed Sepahi's trial counsel that Sepahi "would be required to plead to a dangerous offense that mandated prison," Sepahi's counsel had "declined [the] counter offer and stated that he preferred to conclude the trial."

¶31 Sepahi contends that the foregoing exchange between counsel during trial constituted a plea offer by the state "with sufficient terms and clarity to have compelled [his trial counsel] to, at a minimum, talk to Sepahi before rejecting the offer." We disagree. At best, the dialogue between Sepahi's trial counsel and the prosecutor was the beginning of plea negotiations. Indeed, at the hearing on Sepahi's motion for new trial, held after Sepahi had replaced his trial counsel with his current counsel (who also has represented him in all Rule 32 proceedings below and in this court), Sepahi's counsel withdrew the argument that Sepahi had received ineffective assistance of counsel, noting that the prosecutor had only engaged in a "verbal plea negotiation rather than [having made] a firm offer."

¶32 As Sepahi correctly acknowledges, "a criminal defendant has no constitutional right to plea bargain." *State v. Donald*, 198 Ariz. 406, ¶14, 10 P.3d 1193, ¶14 (App.2000). "But once the State engages in plea bargaining, the defendant has a Sixth Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer." *Id.* And, "'[d]efense counsel has a duty to communicate . . . not only the terms of a plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial.'" *Id.* at ¶9, *quoting Commonwealth v. Napper*, 254 Pa.Super. 54, 385 A.2d 521, 524 (1978).

¶33 These principles come into play, however, only if and when the state extends a particular plea offer to a defendant. Here, the prosecutor's response to the plea bargain overtures of Sepahi's trial counsel, that Sepahi "would be required to plead to a dangerous offense that mandated prison," lacked the specificity required to constitute a plea offer about which Sepahi's counsel was required to inform Sepahi. That the prosecutor's affidavit characterized his response as a "counteroffer" does not alter that conclusion.

¶34 Because Sepahi failed to show that the prosecutor had made a definite, concrete plea offer, Sepahi failed to show that his trial counsel's conduct was deficient. We also note that, because Sepahi is not subject to consecutive sentences and will be resentenced on remand, any prejudice resulting from the alleged ineffectiveness of his trial counsel is questionable. In sum, Sepahi failed to state a colorable claim of ineffective assistance of counsel; therefore, the trial court did not abuse its discretion in denying relief without a hearing.

## DISPOSITION

¶35 We affirm Sepahi's convictions but vacate his sentences because § 13–604.01 does not apply and consecutive sentences are impermissible. The case is remanded for resentencing, with any sentences imposed to be served concurrently. Although we grant Sepahi's petition for review, we deny relief.

ESPINOSA, C.J. and DRUKE, P.J., concurring.