VÁSQUEZ, Presiding Judge:
¶1 Following a jury trial in three consolidated cases, appellant Bobby Carter Jr. was convicted of one count of aggravated assault, four counts of burglary, three counts of theft, two counts of theft of a means of transportation, one count of robbery, and one count of criminal damage. The trial court found Carter had two or more historical prior felony convictions and sentenced him, as a category three repetitive offender, to a combination of concurrent and consecutive presumptive prison terms of 60.75 years. Counsel filed a brief in compliance with Anders v. California , 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and State v. Clark , 196 Ariz. 530, 2 P.3d 89 (App. 1999), stating she had reviewed the record and found no arguable question of law to raise on appeal. Consistent with Clark , she provided "a detailed factual and procedural history of the case with citations to the record," 196 Ariz. 530, ¶ 32, 2 P.3d at 97, and she asked this court to search the record for error. Carter did not file a supplemental brief.
¶2 In the course of our review, we identified arguable issues, raised by Carter at sentencing, implicating double-jeopardy principles. Because we could not say the arguments were "wholly frivolous," Penson v. Ohio , 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), we asked the parties for further briefing on the issue of whether Carter received multiple punishments, in violation of the constitutional protections against double jeopardy, as a result of his convictions for five of the counts. For the reasons that follow, we affirm in part and vacate in part the convictions and sentences.
Factual and Procedural Background
¶3 We view the facts in the light most favorable to affirming the jury's verdicts. State v. Veloz , 236 Ariz. 532, ¶ 2, 342 P.3d 1272, 1274 (App. 2015). On January 10, 2015, Carter engaged in a crime spree that included carjacking a sport utility vehicle (SUV) belonging to C.L., burglarizing a home and barn owned by J.S. and R.S. and stealing *1180 some of their property, and taking a tractor belonging to E.A.[1]
¶4 With respect to the SUV carjacking, C.L. was sitting in the vehicle's passenger seat in a store's parking lot, waiting for her husband, when Carter entered the driver's side door, told C.L. to get out, and quickly drove away, causing C.L. to fall out of the vehicle and break her leg. Carter subsequently crashed the SUV, valued at $18,000, causing its total loss.
¶5 Sometime after Carter crashed the SUV, United States Border Patrol agents assisting in the investigation found him sitting on E.A.'s tractor, valued at more than $25,000. Carter made eye contact with one of the agents and drove away. The agent followed with his emergency lights activated, and Carter eventually stopped in the middle of a field where he was taken into custody.
¶6 That day, J.S. and R.S. had been in the mountains but returned between 4 and 5 p.m. to find both their home and barn had been burglarized. When Carter was arrested, he had nine pieces of jewelry belonging to J.S. in his pocket, and power tools taken from R.S.'s shed were found in the wreckage of the SUV.
¶7 For the crimes committed against C.L., Carter was charged with and convicted of aggravated assault, burglary, criminal damage, theft of property valued at more than $4,000 but less than $25,000, vehicle theft, and robbery. For the crimes committed against E.A., Carter was charged with and convicted of burglary, vehicle theft, and theft of property valued at more than $25,000. For the crimes committed against J.S. and R.S., Carter was charged with and convicted of two counts of burglary and theft of property having a value of more than $1,000.
¶8 We conclude the evidence was sufficient to support the jury's verdicts. See A.R.S. §§ 13-1203(A)(1), 13-1204(A)(1), 13-1501, 13-1506(A)(1), 13-1507(A), 13-1601, 13-1602(A)(1), (B)(1), 13-1801, 13-1802(A)(1), 13-1814(A)(1), 13-1901, 13-1902(A). We nonetheless must consider whether some of Carter's convictions constituted multiple punishments for a single offense, in violation of the Double Jeopardy Clause, as he argued at sentencing.
Discussion
¶9 "The Double Jeopardy Clauses in the United States and Arizona Constitutions prohibit: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." Lemke v. Rayes , 213 Ariz. 232, ¶ 10, 141 P.3d 407, 411-12 (App. 2006) (footnote omitted); see U.S. Const. amend. V ; Ariz. Const. art. II, § 10.[2] The first two of these prohibitions lie "at the core of the Clause's protections," Tibbs v. Florida , 457 U.S. 31, 41-42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), and "ensure[ ] that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence," Ohio v. Johnson , 467 U.S. 493, 498-99, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).
¶10 We are concerned here, however, with the third protection of multiple punishments imposed after a single trial. "In contrast to the double jeopardy protection against multiple trials," this protection "is designed to ensure that" a defendant's convictions and sentences are "confined to the limits established by the legislature." Id. at 499, 104 S.Ct. 2536. Thus, "the question under *1181 the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." Id. ; see also Missouri v. Hunter , 459 U.S. 359, 366-68, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (for "cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the ... court from prescribing greater punishment than the legislature intended"); State v. Siddle , 202 Ariz. 512, ¶ 9, 47 P.3d 1150, 1154 (App. 2002) (same).[3]
¶11 Thus, to determine the constitutionality of multiple convictions and sentences after a single trial, for offenses arising from the same criminal transaction, the dispositive question is whether the legislature "intended to authorize separate punishments" for the separate statutory violations. Albernaz v. United States , 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). "The intent of the legislature in defining and fixing the punishment for an offense is a question of law we review de novo." State v. McPherson , 228 Ariz. 557, ¶ 5, 269 P.3d 1181, 1183-84 (App. 2012).
¶12 In determining whether multiple punishments are authorized after a single trial, courts assume a legislature "ordinarily does not intend to punish the same offense under two different statutes." Whalen v. United States , 445 U.S. 684, 692, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). "Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." Id. And to determine whether convictions pursuant to different statutes constitute the "same offense," courts apply the rule of construction found in Blockburger v. United States : "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). For example, "a defendant may not be convicted for both an offense and its lesser included offense, because they are considered the 'same offense' for double jeopardy purposes." State v. Ortega , 220 Ariz. 320, ¶ 9, 206 P.3d 769, 772-73 (App. 2008) (quoting Lemke , 213 Ariz. 232, ¶¶ 16-18, 141 P.3d at 413-14 ).[4]
¶13 But, in the context of multiple punishments imposed after a single trial, the Supreme Court has cautioned, "The Blockburger test is a 'rule of statutory construction,' and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." Albernaz , 450 U.S. at 340, 101 S.Ct. 1137. Thus,
Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under Blockburger , a court's task of statutory *1182 construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.
Hunter , 459 U.S. at 368-69, 103 S.Ct. 673.
¶14 Similarly, where the Blockburger test suggests cumulative punishment is permissible, because each statutory provision at issue "requires proof of a fact which the other does not," 284 U.S. at 304, 52 S.Ct. 180, that presumption should not control where, for example, "the legislative history ... discloses an intent contrary to the presumption," Albernaz , 450 U.S. at 340-42, 101 S.Ct. 1137 (silent legislative history insufficient to override Blockburger presumption).
State v. Garcia
¶15 As he did at sentencing, Carter relies on State v. Garcia , 235 Ariz. 627, 334 P.3d 1286 (App. 2014), to argue his three convictions involving the SUV and his two convictions relating to the tractor constituted double jeopardy. In Garcia , another panel of this court concluded that vehicle theft is a lesser-included offense of armed robbery and, accordingly, that the defendant could not be convicted of both offenses arising from the single incident of taking a truck. Id. ¶¶ 2-3, 11.
¶16 The court in Garcia reached this conclusion through a process of deductive reasoning, beginning with our supreme court's holdings that theft is a lesser-included offense of robbery and that robbery is a lesser-included offense of armed robbery. Id. ¶ 7 (citing State v. Wall , 212 Ariz. 1, ¶ 15, 126 P.3d 148, 150-51 (2006) (theft lesser-included offense of robbery); State v. Henry , 176 Ariz. 569, 582, 863 P.2d 861, 874 (1993) (robbery lesser-included offense of armed robbery); State v. Kinkade , 147 Ariz. 250, 253, 709 P.2d 884, 887 (1985) (theft lesser-included offense of armed robbery) ). Noting this history and finding that theft and vehicle theft shared "statutory similarities," the Garcia court concluded "theft of means of transportation clearly is a form of theft," and therefore, "like theft, is a lesser-included offense of armed robbery." Id. ¶¶ 7-8, 11.
¶17 In Garcia , the state had argued that vehicle theft "is not a lesser-included offense of armed robbery" because it "includes two statutory elements which are not elements of armed robbery-the property taken must be a 'means of transportation,' and the defendant must possess 'the intent to permanently deprive the person of the means of transportation.' " Id. ¶ 9. The court rejected these arguments, stating, "The essence of the State's first argument is that a 'means of transportation' is not 'property.' " Id. ¶ 10. The court found such a proposition untenable, noting the "broad definition" of property in § 13-1801(A)(12). Id.
¶18 As for "the intent to permanently deprive" required for vehicle theft under § 13-1814(A)(1), the Garcia court simply noted our supreme court's determination that theft is a lesser-included offense of robbery even though the definition of robbery in § 13-1902 does not expressly require the "intent to deprive" identified for theft in § 13-1802(A)(1). Id. ¶ 11 ; see State v. Celaya , 135 Ariz. 248, 252, 660 P.2d 849, 853 (1983). In a footnote, the court acknowledged the variance between "the intent to permanently deprive" required by § 13-1814(A)(1) for vehicle theft, and the less-restrictive "intent to deprive" required by § 13-1802(A)(1) for theft. Garcia , 235 Ariz. 627, n.5, 334 P.3d at 1290, n.5. But it stated this was "an issue this court need not address and does not resolve here," presumably because "the State ha[d] not argued that these textual formulations create an analytical difference." Id.[5]
*1183 ¶19 Although "we generally consider 'decisions of coordinate courts as highly persuasive and binding,' we may reach a different conclusion if 'we are convinced that [a decision is] based upon clearly erroneous principles.' " State v. Romero , 216 Ariz. 52, n.2, 162 P.3d 1272, 1273, n.2 (App. 2007) (quoting Castillo v. Indus. Comm'n , 21 Ariz. App. 465, 471, 520 P.2d 1142, 1148 (1974) ). We agree that our supreme court has concluded, on multiple occasions, that theft is a lesser-included offense of robbery. See Garcia , 235 Ariz. 627, ¶ 7, 334 P.3d at 1289 (collecting cases). And although our analysis differs somewhat, we agree with Garcia 's implicit determination that convictions for both theft and vehicle theft, arising from a single incident, violate double-jeopardy principles. See id. ¶ 8. But unlike the court in Garcia , we conclude vehicle theft is not a lesser-included offense of robbery or armed robbery for the purpose of a double-jeopardy analysis. Based on our application of the same-elements test, as well as our review of legislative history, punishment for both violations, based on a single incident, is constitutionally permissible.
Applicability of Garcia Based Upon Felony Classifications of Carter's Offenses
¶20 The state first notes that " Garcia involved class-2-felony armed robbery, which, by express classification, is a greater offense than class-3-felony theft of a means of transportation," whereas "the present case involves class-4-felony robbery." The state then argues, "[B]y express classification, [class-4-felony robbery] is a lesser offense of both associated class-3-felony theft offenses," and, therefore, the reasoning in Garcia does not support the conclusion that theft is a lesser-included offense of robbery in this case. Similarly, the state maintains the "class-2-felony theft of property (the tractor) in the value of $25,000 or more, by express classification, is not a lesser offense of class-3-felony theft of a means of transportation (the tractor)."
¶21 We cannot agree. "[T]o avoid confusion" over references to "lesser" or "included" offenses, our supreme court has explained:
We have consistently analyzed an "included" offense according to whether all the elements thereof are present in the offense charged without regard to the comparative penalties. The terms "lesser" and "greater" actually refer to the number of elements in the respective crimes because the offense charged must contain all the elements of the included offense plus at least one additional element.
State v. Caudillo , 124 Ariz. 410, 412, 604 P.2d 1121, 1122 (1979) (citations omitted). In Caudillo , the court rejected the argument that "false imprisonment by violence" could not be a lesser-included offense to the " 'greater' offense" of kidnapping because both offenses carried the same penalty. Id. at 412-13, 604 P.2d at 1122-24. And, as relevant to those facts, the court held: "[W]hether the penalty is less or the same, an offense is necessarily included if all the elements thereof are contained within the elements necessary" to prove the greater offense. Id. at 413, 604 P.2d at 1124. The court further stated, "Although, coincidentally, an included offense often carries a less severe penalty, we find nothing in the statutes or in our jurisprudence that mandates such a conclusion." Id. at 412, 604 P.2d at 1122. It also noted its "survey of other jurisdictions reveals that, absent a statute specifically defining and enumerating 'greater' and 'lesser' offenses in terms of penalties, the test employed is identical to that utilized in Arizona." Id.
¶22 We believe this same reasoning applies when a "lesser" offense-by virtue of its having fewer elements-carries a more severe penalty than the "greater" offense that encompasses it. Thus, "lesser in the sense of having fewer elements ... is the only sense of 'lesser' that matters under the Blockburger test." United States v. Peel , 595 F.3d 763, 767-68 (7th Cir. 2010) (Posner, J.) (even though obstruction of justice carried higher penalty, it was lesser-included offense of bankruptcy fraud); see also Lee v. United States , 668 A.2d 822, 826-28 (D.C. 1995) (citing Caudillo ; noting lesser-included offense carried more severe penalty than greater offense); cf.
*1184 United States v. Harley , 990 F.2d 1340, 1343-44 (D.C. Cir. 1993) (applying elements test to offenses having same penalty range; "[w]e see no reason to create the additional and novel requirement that the penalty for the lesser offense be lower than that for the greater").[6]
¶23 Accordingly, we are unpersuaded by the state's argument that, based on the specific felony classifications for these offenses, we are precluded from considering whether Carter's convictions constitute double jeopardy. As discussed below, factors that determine penalty classifications might not constitute elements of an offense for double-jeopardy analysis. See infra n.11. It would thus make little sense to consider felony classifications as determinative of the same-elements test.
Garcia's Conclusion that Vehicle Theft is "a Form of Theft"
¶24 We recognize some appeal in Garcia 's deductive reasoning approach. The court in Garcia began with the correct premise that our supreme court has established that theft is a lesser-included offense of armed robbery. 235 Ariz. 627, ¶ 7, 334 P.3d at 1289. Thus, the court reasoned, if vehicle theft is the same offense as theft (or a lesser-included offense of theft), it must also be a lesser-included offense of armed robbery and, necessarily, robbery. Id. ¶ 8 ; see also Ortega , 220 Ariz. 320, ¶ 9, 206 P.3d at 772-73.[7] But because we conclude Garcia does not establish the second premise of this syllogism-that vehicle theft is either the same as or a lesser-included offense of theft-its conclusion cannot stand.
¶25 The court in Garcia first identified the proper analysis used to "[r]esolv[e] a lesser-included offense argument" and then stated its intent to "focus ... on the elements of theft and [vehicle theft]." 235 Ariz. 627, ¶ 7, 334 P.3d at 1289. But the court did not actually analyze whether the elements of vehicle theft-"the alleged lesser-included offense" for its logical proposition-are "a subset of" the elements of theft, "the alleged greater offense." Id.[8] Instead, Garcia notes "similarities" between the statutes and concludes "[vehicle theft] clearly is a form of theft," notwithstanding the limited application, of § 13-1814, to a "means of transportation," or its specific requirement of an "intent to permanently deprive," neither of which appears in § 13-1802. Id. ¶¶ 8, 11.
¶26 In reaching this conclusion, the court in Garcia cites authority for the proposition " 'that theft as defined in ... § 13-1802 is a single unified offense,' meaning that the subsections in that statute do not refer to separate crimes but, instead, describe different ways to commit the same single offense." Id. ¶ 8 (quoting State v. Cotten , 228 Ariz. 105, ¶ 5, 263 P.3d 654, 656-57 (App. 2011) ). But the court did not explain the legal significance of this authority, particularly in the context of the legislature's 1998 enactment of § 13-1814, a separate statute to address vehicle theft.
*1185 ¶27 Until 1998, when § 13-1814 was enacted, see 1998 Ariz. Sess. Laws, ch. 119, §§ 1, 3, the conclusion that § 13-1802 proscribes a unitary offense certainly would have supported Garcia 's determination-that theft and vehicle theft are not distinct offenses-without the need to engage in any comparative analysis or to consider legislative intent. Indeed, before 1998, theft of "a motor vehicle" was expressly included in § 13-1802, see 1998 Ariz. Sess. Laws, ch. 119, § 1, but "only in that subsection of the theft statute which specifies the degrees of the crime of theft and the punishment for each," State v. Tramble , 144 Ariz. 48, 51, 695 P.2d 737, 740 (1985).
¶28 In Tramble , possibly the first Arizona Supreme Court case to recognize the legislature's creation of "a single crime of 'theft' " in § 13-1802, the court construed that classification subsection, which had then provided, in part, " 'Theft of any property or services valued at less than $100 is a class 1 misdemeanor, unless such property is taken from the person of another or is a motor vehicle or a firearm, in which case the theft is a class 6 felony .' " Id. at 52, 695 P.2d at 741 (quoting 1982 Ariz. Sess. Laws, ch. 44, § 1).[9] According to the court in Tramble , that classification subsection of § 13-1802"does not create or define a separate crime; it states merely that the degree of the crime of theft varies between a class 3 felony and a class 1 misdemeanor depending upon the value of the property stolen" and the circumstances specified. Id. at 51-52, 695 P.2d at 740-41 (addressing subsection's reference to property taken "from the person of another"). Thus, before 1998-when the reference to "a motor vehicle" was deleted from § 13-1802, and § 13-1814 was enacted, see 1998 Ariz. Sess. Laws, ch. 119, §§ 1, 3-theft of a motor vehicle clearly was a form of theft, as defined in § 13-1802, distinguished only as a factor relevant to penalty classification. See id.
¶29 We recognize that Arizona courts continue to regard § 13-1802 as "a single unified offense." Cotten , 228 Ariz. 105, ¶ 5, 263 P.3d at 656-57. However, we see no reason to conclude that the legislature intended § 13-1814 to be a "single unified offense" as well, as Garcia suggests.[10] Garcia , 235 Ariz. 627, ¶ 8, 334 P.3d at 1289. Likewise, we do not believe that, in enacting § 13-1814, the legislature intended that vehicle theft would continue to be considered "merely" for classifying the penalties associated with the unified crime of theft in § 13-1802, and not as a separate offense. See Tramble , 144 Ariz. at 51-52, 695 P.2d at 740-41 (analysis of issue perhaps different had legislature "seen fit to characterize 'taking from the person of another' as a separate crime"). Indeed, in identifying legislative intent to define a single unified offense-through a statute like § 13-1802 that "defines a specific crime and provides ways in which the crime may be committed," State v. Dixon , 127 Ariz. 554, 561, 622 P.2d 501, 508 (App. 1980) -we have commented, "[H]ad the legislature intended to create two separate offenses, it could easily have done so by enacting separate statutes or, at least, separate subsections," State v. Manzanedo , 210 Ariz. 292, ¶¶ 7, 9, 110 P.3d 1026, 1028 (App. 2005) (concluding A.R.S. § 13-1207"creates a single offense that can be committed in alternate ways").
¶30 By legislative action, the offenses of theft and vehicle theft are now defined by different statutes, each requiring a different level of intent. See §§ 13-1802, 13-1814. This is a circumstance we cannot disregard, and one that prevents us from readily adopting Garcia 's conclusion that vehicle theft is but one "form of theft" for the purpose of double-jeopardy analysis. 235 Ariz. 627, ¶ 8, 334 P.3d at 1289. Instead, we begin our own analysis by applying the same-elements tests to Carter's convictions.
Convictions under § 13-1802 and § 13-1814 Involving the Same Vehicles
¶31 As in Garcia , the elements of theft relevant here are those found in *1186 § 13-1802(A)(1), which provides that "a person commits theft by (1) 'without lawful authority,' (2) 'knowingly ... [c]ontrol[ling] property of another' (3) 'with the intent to deprive the other person of such property.' " 235 Ariz. 627, ¶ 8, 334 P.3d at 1289 (alterations in Garcia ) (quoting § 13-1802(A)(1) ).[11] Similarly, for comparative purposes, the elements of vehicle theft relevant to Carter's charges are the same as those identified in Garcia ; a person commits that offense "by (1) 'without lawful authority,' (2) 'knowingly ... [c]ontrol[ling] another person's means of transportation' (3) 'with the intent to permanently deprive the [other] person of the means of transportation.' " Id. (alterations in Garcia ) (quoting § 13-1814(A)(1) ). To discern whether the legislature intended these separate violations to be punished separately, we first consider whether each provision "requires proof of a fact which the other does not." Blockburger , 284 U.S. at 304, 52 S.Ct. 180. If they do not, and in the absence of a clear indication of contrary legislative intent, we presume our legislature did not intend to impose cumulative punishments for the same transaction. See Hunter, 459 U.S. at 368-69, 103 S.Ct. 673.
¶32 Vehicle theft, under § 13-1814(A)(1), requires proof of facts in addition to those necessary to satisfy a conviction for theft-it requires that the property "control[led]" is a means of transportation and that the defendant intend to "permanently" deprive the victim of that property-and there is no element of theft, under § 13-1802(A)(1), that requires proof of a fact that is not also established by vehicle theft. A means of transportation is clearly "property" that satisfies this element of theft, see §§ 13-1801(A)(12), 13-1802(A)(1) ; Garcia , 235 Ariz. 627, ¶ 10, 334 P.3d at 1289-90, and an "intent to permanently deprive," § 13-1814(A)(1), necessarily establishes the more broadly defined "intent to deprive," § 13-1802(A)(1).[12]
¶33 In this case, the Blockburger test suggests the Double Jeopardy Clause was violated by Carter's convictions for both theft and vehicle theft arising from the same incidents-in counts five and six with respect to the SUV and counts nine and ten with respect to the tractor-because theft is a lesser-included offense of vehicle theft.
¶34 Because vehicle theft is the offense having the greatest number of elements, it is the "greater" offense under this analysis, and theft-which is necessarily committed in every instance of vehicle theft-is the "lesser-included" offense. See Peel , 595 F.3d at 767-68. Accordingly, absent "a clear indication of contrary legislative intent" the Double Jeopardy Clause prohibits convictions for both offenses based on the same transaction. Hunter , 459 U.S. at 367, 103 S.Ct. 673 (quoting Albernaz , 450 U.S. at 340, 101 S.Ct. 1137 ); see Ortega , 220 Ariz. 320, ¶ 9, 206 P.3d at 772-73.
*1187 Robbery, Theft, and Vehicle Theft (of the SUV)
¶35 This brings us to Carter's reliance on Garcia to argue that both theft and vehicle theft are lesser-included offenses of robbery, and, therefore, that only one of these convictions may stand with respect to the theft offense involving the SUV. Based on longstanding authority, we agree that Carter's conviction for theft of the SUV, as charged under § 13-1802, is a lesser-included offense of robbery involving theft of the same vehicle.[13] See Garcia , 235 Ariz. 627, ¶ 7, 334 P.3d at 1289 (collecting cases).
¶36 But Garcia 's deductive reasoning, with respect to vehicle theft and robbery offenses, depends on the premise that vehicle theft is the same or a lesser offense of the general offense of theft under § 13-1802, so that whatever is said to be true of theft must also be true of vehicle theft. That reasoning fails, however, because the converse is true: theft is a lesser-included offense of vehicle theft, just as it is a lesser-included offense of robbery. See supra ¶¶ 31-32. This, however, does not resolve any double-jeopardy issue between the two "greater" offenses-robbery and vehicle theft-each of which has at least one element that distinguishes it from theft, as well as from each other.
¶37 Thus, we are not persuaded by the suggestion in Garcia that vehicle theft is "a form of theft," 235 Ariz. 627, ¶ 8, 334 P.3d at 1289, as the same might be said of any "greater" offense and its "lesser-included" counterpart. For example, aggravated robbery-a robbery committed with the aid of an accomplice, see A.R.S. § 13-1903(A) -and armed robbery-a robbery committed while armed with a deadly weapon, see A.R.S. § 13-1904(A)(1) -are certainly both "forms" of their lesser-included offense of robbery. But neither is a lesser-included offense of the other for the purpose of a double-jeopardy analysis. See State v. Anderson , 210 Ariz. 327, ¶ 139, 111 P.3d 369, 399 (2005) (no double-jeopardy violation where each crime "of which [defendant] was convicted requires proof of elements not included in the others").
¶38 Based on a direct application of the same-elements test to robbery and vehicle theft, "each provision requires proof of a fact which the other does not." Blockburger , 284 U.S. at 304, 52 S.Ct. 180. Robbery does not require that a defendant intend to permanently deprive the victim of a means of transportation, and vehicle theft does not require that a defendant use force or the threat of force.[14] Compare § 13-1814(A)(1), with § 13-1902(A).
Legislative History
¶39 Our analysis is not complete until we consider whether there exists "a clear indication of contrary legislative intent" that would rebut the presumptions afforded by the same-elements test. Albernaz , 450 U.S. at 340, 101 S.Ct. 1137. We conclude the legislative history is consistent with our determinations above.
¶40 The Bill Summary for H.B. 2185 prepared by the Arizona House of Representatives provides, "The bill creates a new crime called 'theft of means of transportation' and separates automobile theft from the tiered *1188 penalty system associated with ordinary theft." H. Summary of H.B. 2185, 43rd Leg., 2nd Reg. Sess. (Ariz. Mar. 10, 1998). Similarly, the Senate Fact Sheet identifies the bill's "[p]urpose" as follows: "Makes it a class 3 felony under most conditions to deprive someone of the person's means of transportation but a class 5 felony to only intend to temporarily take another person's vehicle [pursuant to A.R.S. § 13-1803 ]." S. Fact Sheet for H.B. 2185, 43rd Leg., 2nd Reg. Sess. (Revised) (Ariz. 1998). The Fact Sheet further states, "Currently, a theft of a vehicle may lead to a criminal charge ranging from a class 6 felony (presumptive one year in prison) to a class 2 felony (presumptive five years in prison)," and it explains the bill "1. Increases from a class 6 felony to a class 5 felony the penalty for taking another's means of transportation without intent to permanently deprive the owner of his or her vehicle [pursuant to A.R.S. § 13-1803 ]" and "2. Provides that theft of means of transportation in all other cases is a class 3 felony." Id.
¶41 Based on this legislative history, we first conclude our state legislature did not intend for a defendant to be punished under both § 13-1802 and § 13-1814 for the same transaction, even though it enacted § 13-1814 to define a separate offense of vehicle theft. Instead, the legislature clearly intended to provide an alternative penalty for vehicle theft-from one that varied based on value, under § 13-1802, to a standardized, class three felony under § 13-1814-and not to impose cumulative penalties under both statutes for a single offense. Accordingly, Carter may only be convicted of one of these theft offenses-theft or vehicle theft-for the theft of the SUV, and only of one theft offense for the theft of the tractor.[15]
¶42 With respect to vehicle theft and robbery, however, there is no indication that the legislature did not intend to authorize cumulative punishment for these offenses. Because silence as to legislative intent is insufficient to rebut the presumption afforded by the Blockburger test, see Albernaz , 450 U.S. at 340-42, 101 S.Ct. 1137, we conclude these offenses, when they arise from the same incident, may be punished separately.
¶43 In the course of our review, we have considered whether, based on legislative history, we might consider the theft and vehicle theft statutes in pari materia -as one law-in a manner that would permit us to conclude, as the court in Garcia did, that vehicle theft, pursuant to § 13-1814(A)(1), is simply "a form of theft" committed under § 13-1802(A)(1). Garcia , 235 Ariz. 627, ¶ 8, 334 P.3d at 1289 ; see also State v. Gamez , 227 Ariz. 445, ¶ 27, 258 P.3d 263, 267 (App. 2011) ("Statutes that are in pari materia -those that relate to the same subject matter or have the same general purpose as one another-should be construed together as though they constitute one law."). We are mindful, for example, that the legislature's stated purpose relates solely to penalty classifications of vehicle thefts and the unlawful use of a means of transportation in § 13-1803, a purpose, it seems, that might also have been accomplished through amendment of existing statutes. But even were we to regard the specification of theft "of means of transportation" as a factor relevant only to classification, we cannot escape consideration of the requirement in § 13-1814(A)(1) that an offender intend to "permanently" deprive the victim of his or her means of transportation.
¶44 Although "[t]he legislature ... need not prescribe a culpable mental state in defining a crime," "if [it] does so, that mental state becomes an element of the offense to be proved by the state." State v. Brown , 204 Ariz. 405, ¶ 19, 64 P.3d 847, 852 (App. 2003). We are unable to determine the intent of the legislature in including this element in § 13-1814(A)(1), but the inclusion apparently was deliberate. When H.B. 2185 was introduced, *1189 § 13-1814(A)(1) contained the mens rea requirement of an "intent to permanently or temporarily deprive."[16] Introduced Version of H.B. 2185, 43rd Leg., 2nd Reg. Sess. (Ariz. 1998). Before its final passage, however, the Senate amended the bill, striking "or temporarily" from the intent clause, see S. Engrossed Version of H.B. 2185, 43rd Leg., 2nd Reg. Sess. (Ariz. 1998); S. Adopted Amend. (Judiciary) to H.B. 2185, 43rd Leg., 2nd Reg. Sess. (Ariz. 1998), and the House of Representatives apparently concurred, such that the enacted law requires "the intent to permanently deprive," § 13-1814(A)(1).[17] Because this mental state is elemental to a determination of guilt, see Brown , 204 Ariz. 405, ¶ 19, 64 P.3d at 852, we do not believe we can disregard it in order to find vehicle theft is a lesser-included offense of robbery. In this regard, we agree with the state that Garcia 's analysis and contrary conclusion are erroneous.
¶45 In sum, we conclude Carter's convictions for theft, pursuant to § 13-1802, and vehicle theft pursuant to § 13-1814, as to each of two vehicles, constitute impermissible multiple punishments. We further conclude that theft is a lesser-included offense of robbery, and convictions for both of those charges, related to a single incident, are similarly impermissible. However, we also conclude that vehicle theft is not a lesser-included offense of robbery, and Carter's convictions for both of those offenses, considered in isolation, do not violate the prohibition against double jeopardy.
Disposition
¶46 Carter's convictions for both theft and vehicle theft arising from single transactions, as charged in counts five and six, and also in counts nine and ten, violate the Double Jeopardy Clause. Similarly, his conviction for theft, in count six, and for robbery in count seven, constitute impermissible double punishment for the same offense. We recognize that "usually ... the conviction carrying the lesser penalty ... is vacated," as "it would be paradoxical to give the defendant a shorter sentence than he would have received had the government not also charged him with the less serious offense." Peel , 595 F.3d at 768.
¶47 Accordingly, to remedy the double-jeopardy violations here, we vacate Carter's convictions and sentences for count five, a class three felony theft pursuant to § 13-1802 for the theft of C.L.'s SUV, and count nine, a class three felony vehicle theft pursuant to § 13-1814 for the theft of E.A.'s tractor.[18]
*1190 Carter's remaining convictions and sentences are affirmed.

As originally filed, Cochise County Cause No. CR201500022 alleged offenses committed against C.L.; CR201500023 alleged crimes committed against E.A.; and CR201500157 charged Carter with crimes against R.S. and J.S. For presentation to the jury, the counts of each indictment were renumbered and presented serially, so that counts one through seven pertained to C.L., counts eight through ten related to E.A., and counts eleven through thirteen pertained to R.S. and J.S.

"No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const. amend. V ; "No person shall ... be twice put in jeopardy for the same offense," Ariz. Const. art. II, § 10. The analysis under both the federal and state constitutions are the same "[b]ecause the two clauses have been held to grant the same protection to criminal defendants." State v. Eagle , 196 Ariz. 188, ¶ 5, 994 P.2d 395, 397 (2000).

Carter received concurrent sentences for the multiple convictions at issue here, but multiple convictions for the same offense constitute multiple punishments even if the sentences are to be served concurrently. See State v. Brown , 217 Ariz. 617, ¶ 13, 177 P.3d 878, 882 (App. 2008). Thus, our reference in this opinion to "punishments" includes multiple convictions as well as consecutive sentences, although some of the older authorities cited appear to refer only to the latter. See, e.g. , Whalen v. United States , 445 U.S. 684, 689, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) ("The Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so."). In Ball v. United States , the Supreme Court clarified that when the legislature did not intend a single offense to be punishable under two separate provisions, "[t]he separate conviction ... has potential adverse collateral consequences that may not be ignored." 470 U.S. 856, 864-65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). Thus, the Court concluded, "The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its ... sentence, is unauthorized punishment for a separate offense." Id. at 864, 105 S.Ct. 1668 ; accord Rutledge v. United States , 517 U.S. 292, 302, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996).

A "lesser-included offense" is one "composed solely of some but not all of the elements of the greater crime so that it is impossible to have committed the crime charged without having committed the lesser one." State v. Cheramie , 218 Ariz. 447, ¶ 9, 189 P.3d 374, 375-76 (2008) (quoting State v. Celaya , 135 Ariz. 248, 251, 660 P.2d 849, 852 (1983) ).

In Garcia , the state apparently relied on State v. Espinoza , 233 Ariz. 176, ¶ 15, 310 P.3d 52, 57 (App. 2013), in which this court, relying on an earlier memorandum decision involving the same defendant, suggested that "theft of a means of transportation was incorrectly identified as a lesser-included offense of aggravated robbery." 235 Ariz. 627, n.4, 334 P.3d at 1290, n.4. That statement was only incidental to our discussion of whether retrial was permissible, Espinoza , 233 Ariz. 176, ¶¶ 14-15, 310 P.3d at 56-57, and, as the court in Garcia observed, that issue was "different than, and unrelated to, the lesser-included offense issue," 235 Ariz. 627, n.4, 334 P.3d at 1290, n.4. In its brief in the instant case, the state acknowledges that our memorandum decision in Espinoza is without precedential value. See Ariz. R. Sup. Ct. 111(c)(1)(C) ("[m]emorandum decisions of Arizona state courts are not precedential" and may be cited "for persuasive value ... only if ... issued on or after January 1, 2015[ and] no opinion adequately addresses the issue before the court").

In its brief, the state cited this court's statement in Siddle suggesting "lesser" and "greater" offenses, for the purpose of double-jeopardy analysis, may be distinguished "by reason of felony classification." 202 Ariz. 512, ¶ 11, 47 P.3d at 1154. We supported this suggestion in Siddle with the proposition that "[a] lesser-included offense can have the same or lesser penalty as the greater offense." Id. (quoting State v. Chabolla-Hinojosa , 192 Ariz. 360, ¶ 12, 965 P.2d 94, 97 (App. 1998) ). Caudillo is the origin of this proposition. See Chabolla-Hinojosa , 192 Ariz. 360, ¶ 12, 965 P.2d at 97 ; State v. Patton , 136 Ariz. 243, 244-45, 665 P.2d 587, 588-89 (App. 1983) (quoting Caudillo , 124 Ariz. at 411, 604 P.2d at 1121 ). Considered in context, we conclude Caudillo 's holding was not a limitation on Arizona's application of the same-elements test but simply reflected the specific issue before that court. Our comment in Siddle regarding "felony classification" was dictum that immediately preceded our application of the "same elements test," 202 Ariz. 512, ¶¶ 11-12, 47 P.3d at 1154-55, which we conducted "without regard to the comparative penalties" of the statutes considered, Caudillo , 124 Ariz. at 412, 604 P.2d at 1122.

See State v. Yarbrough , 131 Ariz. 70, 72-73, 638 P.2d 737, 739-40 (App. 1981) ("[T]heft is always a lesser included offense of robbery.").

As addressed below, our analysis leads us to the opposite conclusion-that theft is a lesser-included offense of vehicle theft, because vehicle theft requires proof of all elements of theft and at least one additional element. See infra ¶¶ 31-32; see also Garcia , 235 Ariz. 627, ¶ 6, 334 P.3d at 1288-89 (for lesser-included offense relationship, "the greater offense must require each element of the lesser offense plus one or more additional elements not required by the lesser offense").

Apart from amendments to raise the dollar amounts or associated penalty classifications, the classification subsection in § 13-1802 remained unchanged until the legislature enacted § 13-1814 in 1998. Compare 1993 Ariz. Sess. Laws, ch. 255, § 31, with 1982 Ariz. Sess. Laws, ch. 44, § 1.

Other than the identification of a "means of transportation" as the object of the theft, and the specification of an intent to "permanently" deprive the victim of the theft of that property in § 13-1814(A)(1), § 13-1814(A)(1) through (5) is virtually identical to § 13-1802(A)(1) through (5).

We do not consider penalty classification factors based on the value of the stolen property, in § 13-1802(G), as elements in this calculus. Not every statutory provision identifies an element of the offense for this inquiry, as "[s]ome statutes describe the elements of an offense in one subsection and in other subsections classify the offense based upon additional factors which, if proven, increase or decrease the severity of the offense." Ortega , 220 Ariz. 320, ¶ 15, 206 P.3d at 774. In State v. Brokaw , we found the classification scheme for theft, now set forth in § 13-1802(G), "relevant only to the computation of punishment" and "intended to be made separately from the determination of guilt or innocence"; thus, the value of stolen property was not a "distinguishing element" between a greater and lesser offense of theft. 134 Ariz. 532, 534-35, 658 P.2d 185, 187-88 (App. 1982) ; see also State v. Chabolla-Hinojosa , 192 Ariz. 360, ¶¶ 11-12, 19, 965 P.2d 94, 97, 99 (App. 1998) ("possession of marijuana for sale having a weight of more than four pounds" lesser-included offense of "transportation of marijuana for sale having a weight of two pounds or more," despite differing weights relevant to penalty classifications; "weight is not essential to defendant's guilt or innocence of either charge" and not relevant for same-elements test); cf. Tramble , 144 Ariz. at 51-52, 695 P.2d at 740-41 (classification subsection in § 13-1802"merely" identifies penalty classification for theft "depending upon the value of the property stolen").

Pursuant to § 13-1801(A)(4),
"Deprive" means to withhold the property interest of another either permanently or for so long a time period that a substantial portion of its economic value or usefulness or enjoyment is lost, to withhold with the intent to restore it only on payment of any reward or other compensation or to transfer or dispose of it so that it is unlikely to be recovered.

As discussed previously, the fact that robbery carries a lower felony classification than the theft or vehicle theft charged in this case does not preclude us from considering whether it is a "greater" offense for double-jeopardy purposes. See supra ¶¶ 21-23.

In Celaya , our supreme court held theft was a lesser-included offense of robbery, in part, by concluding, under the authority of A.R.S. § 13-202(B), that robbery "necessarily involve[s]" the same mens rea of an intent to deprive. Celaya , 135 Ariz. at 252, 660 P.2d at 853 (quoting § 13-202(B) ). Garcia apparently relies on this conclusion to support its similar determination with respect to vehicle theft. 235 Ariz. 627, ¶ 11 & n.5, 334 P.3d at 1290 & n.5. But we find that reliance unavailing with respect to the requirement, in § 13-1814(A)(1), of an intent "to permanently deprive." The court in Celaya cited this court's reasoning, in State v. Yarbrough , "that robbery as defined under the new code 'necessarily includes an exercise of control over property as contemplated by the definition of theft in A.R.S. § 13-1802(A)(1) ' because 'one cannot take property without exercising control over it.' " 135 Ariz. at 252, 660 P.2d at 853 (quoting 131 Ariz. 70, 73, 638 P.2d 737, 740 (App. 1981) ). But neither of these authorities suggest, nor can we conclude, that the offense of robbery necessarily involves the greater intent to permanently deprive a victim of his or her property.

We do not mean to suggest that a defendant may not be convicted of the "lesser" offense of theft, pursuant to § 13-1802, with the classification of the offense determined by value, when the property stolen is a motor vehicle. The elements of a "lesser" offense (for double-jeopardy purposes) will always be satisfied by a conviction of the greater offense; in the event the "lesser" offense carries a more severe penalty, as a result of classification factors, a court may vacate the conviction on the "greater" offense and let the more severe penalty stand. See Peel , 595 F.3d at 768 ("[t]he remedy is to eliminate the doubleness"; "which conviction must be vacated is not dictated by the Constitution").

Section 13-1814 was previously numbered A.R.S. § 13-1813. See 1998 Ariz. Sess. Laws, ch. 119, § 3.

In State v. Kamai , this court held "[t]he phrase 'without intent to permanently deprive' in the unlawful use [of a means of transportation] statute does not describe an element of the crime which the state must prove" but "is simply included in the statute to distinguish unlawful use from theft." 184 Ariz. 620, 622, 911 P.2d 626, 628 (App. 1995) ; see also Garcia , 235 Ariz. 627, n.5, 334 P.3d 1286. We observed that § 13-1803 had eliminated "the affirmative element of intent to temporarily deprive the owner of his vehicle" that had "prevented joyriding," as defined in an earlier criminal code, "from being a lesser included offense of auto theft." Kamai , 184 Ariz. at 623, 911 P.2d at 629. But because § 13-1803 was enacted in 1977, see 1977 Ariz. Sess. Laws, ch. 142, § 72, and Kamai was decided in 1995, the legislature had reason to know, in 1998, that "intent to deprive," as provided in § 13-1802(A)(1), would be sufficient to distinguish unlawful use under § 13-1803 from the newly enacted vehicle-theft statute. Thus, to the extent the court in Garcia may suggest otherwise, see 235 Ariz. 627, n.5, 334 P.3d at 1290, n.5, this does not appear to have been the motivation for the requirement in § 13-1814(A)(1) of an intent to permanently deprive, see County of Cochise v. Faria , 221 Ariz. 619, ¶ 10, 212 P.3d 957, 960-61 (App. 2009) ("We presume the legislature is aware of existing statutes when it enacts new statutes.") (quoting Home Builders Ass'n of Cent. Ariz. v. City of Maricopa , 215 Ariz. 146, ¶ 15, 158 P.3d 869, 874 (App. 2007) ).

In this manner, we avoid double-jeopardy violations, but we leave in place convictions and sentences for counts six and seven, permissible multiple offenses for robbery, a class four felony, and vehicle theft, a class three felony, both pertaining to C.L. We also preserve Carter's conviction and sentence for count ten, a class two felony, for theft of property having a value of $25,000 or more, related to the theft of E.A.'s tractor. Because of its value-based classification, this conviction pursuant to § 13-1802 is the more "serious" conviction-that is, the one having the most severe penalty-even though, for double-jeopardy purposes, theft is a lesser-included offense of vehicle theft. See Peel , 595 F.3d at 768.